## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**ROBERT TORRES,**
**MICHAELE TENORIO, and**
**HILDA VALDEZ,**

> **Plaintiffs,**

**v.**

**FRANCISCO HERNANDEZ,**
**in his individual capacity,**           **Case No. 11 CV 1012 JAP/WPL**
**TIMOTHY McCARSON,**                   **(Consolidated with Case**
**in his individual capacity,**           **Nos. 11 CV 1013 JAP/WPL and**
**JENNIFER GARCIA,**                      **11 CV 1014 JAP/WPL)**
**in her individual capacity,**
**PATRICK APODACA,**
**in his individual capacity,**
**EDOUARD TAYLOR,**
**in his individual capacity,**
**RAYMOND D. SCHULTZ,**
**in his individual capacity,**
**CITY OF ALBUQUERQUE,**

> **Defendants.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTIONS TO DISMISS

Defendant Raymond D. Schultz (Schultz), Chief of Police for the City of Albuquerque,

asks the Court to dismiss this case under Fed. R. Civ. P. 12(b)(6) for failure to state a claim

against him in his individual capacity.  Because Plaintiffs have stated a plausible claim against

Schultz, the Court will deny the three motions in this consolidated case: 1) DEFENDANT

RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO

DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1012, Doc. No. 14); 2) DEFENDANT

RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO

DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1013, Doc. No. 14); and 3)

DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN

SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1014, Doc. No. 15)

(together, Motions). [1]  Case Nos. 11 CV 1012, 11 CV 1013, and 11 CV 1014 have been

consolidated for all purposes, and all pleadings, orders, and documents are to be filed only in

Case No. 11 CV 1012.

     I.  Standard of Review

     Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion to

dismiss, the Court must accept all well-pleaded allegations as true and must view them in the

light most favorable to the plaintiff.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson

v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).  Rule 12(b)(6) requires that a complaint set forth

the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a

formulaic recitation of the elements of a cause of action.  *See Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts

sufficient to state a plausible claim of relief.  *Id*. at 570.  A claim is plausible when the plaintiff

---

[1] In ruling on the Motions, the Court has considered PLAINTIFF ROBERT TORRES'S RESPONSE TO DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1012, Doc. No. 18); PLAINTIFF MICHAELE TENORIO'S RESPONSE TO DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1013, Doc. No. 17); PLAINTIFF HILDA VALDEZ'S RESPONSE TO DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1014, Doc. No. 18); and DEFENDANT RAYMOND D. SCHULTZ'S REPLY TO PLAINTIFFS' RESPONSE TO RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1012, Doc. No. 21).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

 II. Background

  A. Robert Torres

On November 11, 2010, Hilda Valdez (Valdez) placed a 911 call from the residence of Russell (Ray) Tenorio (Tenorio) because Tenorio was threatening to harm himself with a knife. (Comp. ¶ 7.)  In addition to Valdez, Michaele Tenorio (Ms. Tenorio), Tenorio's wife, and Robert Torres (Torres) were present at the Tenorio residence.  (*Id.* ¶ 8.)  Several officers from the Albuquerque Police Department (APD) arrived, and four officers entered the Tenorios' residence.  Plaintiff Torres alleges that one officer had a beanbag shotgun, one officer had a Taser gun, and the remaining two officers had their duty pistols. (*Id.* ¶ 10.)  Valdez was outside the residence in the front yard and Tenorio, Ms. Tenorio, and Torres were inside the residence in the kitchen. (*Id.* ¶ 11.)  The officers ordered everyone to exit the kitchen, which they did, but Tenorio exited the kitchen holding the knife down at his side.  (*Id.* ¶ 13.)  The officers ordered Tenorio to drop the knife, but seconds later, two officers fired simultaneously a taser gun and a duty pistol at Tenorio.  (*Id.* ¶ 14.)

Immediately after the shooting, Torres was handcuffed, and Officer Jennifer Garcia, a sergeant with APD, escorted Torres out of the residence.  Officer Garcia then ordered APD Officer Timothy McCarson to detain Torres.  (*Id.* ¶¶ 15-17.)  Torres was held in the back of Officer McCarson's patrol unit for two to two and one-half hours.  (*Id.* ¶ 18.)  While in the patrol unit, Torres was not allowed to use his cell phone; and the cell phone was confiscated by Officer McCarson.  (*Id.* ¶ 19.)  After being allowed to exit the patrol unit, Torres was further detained while the officers interviewed him and took photographs of him. (*Id.* ¶ 21.)  Officer Patrick

Apodaca was acting as incident commander.  (*Id.* ¶ 16.)

B.  Michaele Tenorio

Ms. Tenorio was in the kitchen with Tenorio and Torres when the officers arrived at the Tenorios' residence. (Case No. 11 CV 1013, Comp. ¶ 11.)  After the officers ordered everyone out of the kitchen, Ms. Tenorio, Tenorio, and Torres exited the kitchen with Tenorio holding a knife down at his side. (Comp. ¶¶ 12-13.)  The officers ordered Tenorio to drop the knife, and the officers fired the taser and a duty pistol at Tenorio as described above.  Officer Garcia escorted Ms. Tenorio to Officer Edouard Taylor's patrol unit and ordered Officer Taylor to detain Ms. Tenorio.[2]  Ms. Tenorio was held in Officer Taylor's patrol unit for two to two and one-half hours. (Comp. ¶ 17.) While Ms. Tenorio was in the patrol unit, she asked to use the restroom; however, Officer Taylor refused permission.  (Comp. ¶¶ 19-20.)  Unable to leave the patrol unit, Ms. Tenorio urinated on herself.  (Comp. ¶ 21.)  Ms. Tenorio was escorted into her residence and detained for an additional period of time after exiting the patrol unit while the officers interviewed her and took photographs of her.  (Comp. ¶ 18.)  Before taking her photograph, one of the officers wrapped a white garment around Ms. Tenorio's waist and through her legs, like a diaper.  (*Id.* ¶ 27.)  In the photographs, Ms. Tenorio is depicted with the white "diaper" along with the urine stains appearing on her blouse.  (*Id.* 28.)

---

[2] All of the complaints allege that approximately four officers entered the residence.  Ms. Tenorio's original complaint asserts claims against Officer Edouard Taylor, Officer Garcia and Officer Apodaca, but Ms. Tenorio does not assert claims against Officer McCarson or Officer Hernandez.  Torres does not mention Officer Taylor in his complaint, but asserts claims against Officer Garcia, Officer Apodaca, Officer Hernandez and Officer McCarson.  Valdez asserts claims against Officer Hernandez, Officer Garcia and Officer Apodaca.  Thus a total of five officers are alleged to have been involved in this incident: Officer Hernandez, Officer McCarson, Officer Garcia, Officer Apodaca, and Officer Taylor.

C.  Hilda Valdez

When the APD officers arrived at the Tenorios' residence, Valdez was in the front yard. (Case No. 11 CV 1014, Comp. ¶ 11.)  Immediately after the residence was evacuated, Officer Garcia escorted Valdez to Officer Hernandez's patrol unit and ordered Officer Hernandez to hold Valdez in custody.  (*Id.* ¶ 16.)  Valdez was in the back of Officer Hernandez's patrol unit for two to two and one-half hours. (*Id.* ¶ 17.)  When Valdez was placed in the patrol unit, she complained that she was having an asthma attack and asked the officer to allow her to retrieve her inhaler from her purse that was inside her vehicle. (*Id.* ¶ 19.)  Officer Hernandez refused Valdez permission to get her inhaler but notified rescue personnel on the scene that Valdez needed treatment.  (*Id.* ¶ 20.)   Rescue personnel treated Valdez, and Valdez was returned to Officer Hernandez's patrol unit. (*Id.* ¶¶ 21-22.)  After sitting in the patrol vehicle an additional thirty minutes, Valdez asked to use the restroom, and Officer Hernandez transported Valdez to the APD Southeast Substation where she used the restroom.  (*Id.* ¶¶ 23-24.)  Valdez was then returned to Officer Hernandez's patrol vehicle where she stayed for approximately two more hours.  (*Id.* ¶ 25.)

III.  Plaintiffs' Claims

In Count I of their Complaints, Torres, Ms. Tenorio, and Valdez (together, Plaintiffs) assert claims under 42 U.S.C. § 1983[3] for the violation of Plaintiffs' Fourth Amendment and Fourteenth Amendment rights to be free from unlawful detention.  Plaintiffs allege that

---

[3] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"  42 U.S.C. § 1983.

Defendants detained Plaintiffs without reasonable suspicion or probable cause.  Plaintiffs also allege that even if the initial detention was lawful because they were witnesses to the incident, Plaintiffs were detained far beyond the allowable period for an investigative detention of witnesses.  In Count II of the complaints, Plaintiffs assert claims against Defendant Schultz as the Chief of Police and against the City of Albuquerque under § 1983 for violation of Plaintiffs' Fourth Amendment and Fourteenth Amendment rights.

In Count II, Plaintiffs allege that "Defendants Schultz and City of Albuquerque have been sued previously for precisely the same type of Constitutional violations at issue in the present lawsuit." (*Id.* ¶ 35.)  "Those lawsuits resulted in clear instructions to the Defendants from the [10th] Circuit finding that investigatory detentions requiring more than a brief stop are unconstitutional." (*Id.* ¶ 36.)  "Detective Andrea Ortiz, the lead detective on the case, confirmed in a recorded interview that APD's 'standard procedure' is to place witnesses into custody." (*Id.* ¶ 37.)  Plaintiffs also allege that Schultz "is aware of the clearly established constitutional requirements regarding investigatory detentions but has permitted APD officers to continue to make custodial detentions of citizens in violation of the constitutional requirements despite this knowledge." (*Id.* ¶ 38.)  Schultz "took no supervisory action to prevent or correct unlawful behavior during the period of time relevant to this Complaint." (*Id.* ¶ 39.)  Schultz's "supervisory actions and failures to act, in light of his knowledge, was [sic] so culpable as to constitute approval, acquiescence, and ratification of" the officers' behavior. (*Id.* ¶ 39.)  Schultz's failure to adequately train and control the officers, "constituted deliberate indifference to Plaintiff's Fourth and Fourteenth Amendment rights." (*Id.* ¶ 40.)  Schultz's failure to supervise and to prevent the officers' misconduct,  "constituted a custom, practice, and policy of deliberate indifference to the rights of Plaintiff[s] . . . ." (*Id.* ¶ 41.)

6

IV.  Discussion

In the Motions, Schultz seeks dismissal of the claims against him because the allegations, even if true, do not assert a plausible claim against him in his individual capacity.  Admittedly, under *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), Schultz cannot be vicariously liable under the theory of *respondeat superior* simply because he is the Chief of Police with supervisory authority over the officers involved in this incident.  Schultz maintains that in order to be liable for a constitutional violation, he must have personally participated in the actions that violated Plaintiffs' constitutional rights.  *See, e.g., Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)).  Schultz further asserts that since he was not present and did not participate in the officers' alleged constitutional violations, under *Iqbal*, he cannot be held individually liable as the officers' supervisor.

In the Responses, Plaintiffs argue that they are not seeking to hold Schultz vicariously liable for the officers' actions, but instead seek to hold Schultz liable because the officers' actions can be "affirmatively linked" to the action or inaction of Schultz.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  In addition, Plaintiffs contend that the *Iqbal* holding did not eliminate claims against supervisors brought under § 1983, but instead, a supervisor can be liable if the supervisor was responsible for the policies or procedures that led to the constitutional violation. *See Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010).

In *Dodds v. Richardson*, Logan County, Oklahoma sheriff's deputies arrested the plaintiff under a felony arrest warrant and placed him in the Logan County Jail on Friday, April 6, 2007. An Oklahoma state district court judge had already set bond for Plaintiff in the arrest warrant in the amount of $5,000.  Plaintiff alleged Logan County Jail employees told two individuals who inquired about posting bond on plaintiff's behalf that the plaintiff could not post the preset bail

7

until after he was arraigned by a judge.  Plaintiff was not arraigned until Monday, April 9.  At

that time, another state district judge reset bail at $10,000.  Plaintiff did not post bail.  Later that

week, the district court nevertheless released the plaintiff on a personal recognizance bond.  The

charges against the plaintiff underlying the arrest warrant were eventually dismissed in

September 2007. Plaintiff filed suit under 42 U.S.C. § 1983 against, among others, the Sheriff in

his individual capacity.  Plaintiff asserted in his complaint he "had a liberty interest in the pre-set

bond under the Fourteenth Amendment," but the Sheriff denied him the right ". . . without

explanation, in violation of the [United States] Constitution." *Id.* at 1189-90.

      The Sheriff, relying on *Iqbal*, argued that he could not be held liable unless "he

personally participated in such a violation with a sufficiently culpable state of mind." *Id.* at 1194.

Noting that "Defendant's argument implicates important questions about the continuing vitality

of supervisory liability under § 1983 after the Supreme Court's recent decision in *Ashcroft v.*

*Iqbal*[,]" the Court concluded that a superior may be held to have been personally involved in a

constitutional violation even if the superior did not directly participate in the violation. *Id.* at

1195.

> Whatever else can be said about *Iqbal*, . . . we conclude the following basis of § 1983
> liability survived it and ultimately resolves this case: 1983 allows a plaintiff to impose
> liability upon a defendant-supervisor who creates, promulgates, implements, or in some
> other way possesses responsibility for the continued operation of a policy the
> enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or
> causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the
> Constitution. . . ."  A plaintiff may therefore succeed in a § 1983 suit against a defendant-
> supervisor by demonstrating: (1) the defendant promulgated, created, implemented or
> possessed responsibility for the continued operation of a policy that (2) caused the
> complained of constitutional harm, and (3) acted with the state of mind required to
> establish the alleged constitutional deprivation.

*Id.* at 1199 (citations omitted).  The *Dodds* court found sufficient evidence to support the first

two requirements: the active maintenance of the policy, which caused the constitutional injury.

The court also found sufficient evidence of deliberate indifference, the level of culpability the court assumed (but did not decide) would apply to plaintiff's substantive due process claim that he was denied the right to post preset bail. *Dodds*, 614 F.3d at 1204-06.

In a concurring opinion in *Dodds*, United States Tenth Circuit Judge Tymkovich observed:

> In sum, our precedent has established, with varying levels of clarity, that a supervisor is only liable for violations that he caused, and that causation requires at least some degree of fault on the supervisor's part. Exactly how this causation can be shown varies depending on the type of violation and the facts of the case. . . . First, a supervisor may directly order a subordinate to violate the plaintiff's rights. . . . Next, some cases say a supervisor may cause violations when he or she has actual knowledge of past constitutional violations being carried out by a subordinate, and does nothing to stop future occurrences. . . . Finally, a series of cases requires a standard of deliberate indifference. Those types of cases include the failure to train, the failure to supervise, and potentially other supervisory shortcomings . . . In those cases, we may find that a supervisor has somehow caused the violation to occur by an egregious failure to act. . . . In sum, our decisions hold that supervisors are liable for constitutional violations they cause. The exact contours of causation—especially regarding an official's state of mind sufficient for liability—are uncertain in light of *Iqbal*. But for purposes of this case, Dodds alleges the sheriff deliberately implemented an unconstitutional bail policy that violated his clearly established rights as a pretrial detainee and thereby caused him injury. As the majority ably demonstrates, his allegations are enough to survive summary judgment.

*Dodds*, 614 F.3d at 1211-13 ((Tymkovich, J., concurring).

Plaintiffs alleged in their complaints that APD standard procedures require APD officers to detain witnesses during an investigation. As Chief of Police, Schultz is ultimately responsible for establishing and maintaining compliance with the standard procedures. The standard procedure of placing witnesses into custody is allegedly the direct cause of Plaintiffs' lengthy detention on November 10, 2010. Whether the detentions described by Plaintiffs state a plausible claim for the violation of Plaintiffs' Constitutional rights requires a brief discussion.

In general, "police have less authority to detain those who have witnessed a crime for

investigatory purposes than to detain criminal suspects." *Walker v. City of Orem*, 451 F.3d 1135, 1150 (10th Cir. 2006). Established Tenth Circuit precedent requires that investigative and witness detentions be brief and carefully limited in scope. *Illinois v. Lidster*, 540 U.S. 419, 427-428 (2004) (citing cases involving investigatory detentions). Whether the detention of Plaintiffs as witnesses violated their Constitutional rights is further answered in *Manzanares v. Higdon*, 575 F.3d 1135 (10th Cir. 2009).

In *Manzanares*, two APD officers arrived at the home of Danny Manzanares in the early morning hours of March 16, 2002. The officers believed Manzanares could help them locate a person suspected of committing a rape the previous night. Manzanares allowed the two officers into his home and answered several questions about the suspect, who was his co-worker. Eventually, Manzanares asked the officers to leave his home, the officers refused, and Manzanares became agitated. The officers handcuffed Manzanares, and additional investigators were called to the home. Manzanares then agreed to guide the officers to the home of the suspect, but the officers again handcuffed Manzanares, locked Manzanares in a squad car, and transported him to the address he had given. Finding no one at the suspect's home, the officers sought a search warrant for the house but kept Manzanares in the back of the squad car for more than three hours. Manzanares sued one of the officers under § 1983, and the jury ruled in his favor on all claims. The Tenth Circuit Court of Appeals upheld the district court's denial of the defendants' motion for judgment as a matter of law. On the issue of the detention in the squad car, the Court ruled that the three hour detention constituted an arrest without probable cause:

As the Supreme Court has noted, it has never held a detention of 90 minutes or longer to be anything short of an arrest. *United States v. Place*, 462 U.S. 696, 709–710. . . (1983). [Defendant] Higdon points us to no case, and our independent research reveals none, construing a detention of 90 minutes or longer as an investigative detention.  *See, e.g., Walker*, 451 F.3d at 1150 (90 minute detention constituted an arrest); *United States v. Edwards*, 103 F.3d 90, 93 (10th Cir.1996) (45 minute detention constituted an arrest); *United States v. Shareef*, 100 F.3d 1491, 1501–02 (10th Cir.1996) (30 and 45 minute detentions did not constitute arrests).

*Id.* at 1148 (footnote omitted).

Plaintiffs have sufficiently alleged under the standards for detention of witnesses outlined in *Manzanares*, that their detention in the back of police vehicles for two to two and one-half hours violated their Constitutional right to be free from unreasonable seizure.  In addition, under the standards set forth in *Dodds*, Plaintiff have sufficiently alleged that Schultz was responsible for the standard procedure under which APD officers are required to detain all witnesses during a police investigation.  With these allegations, Plaintiffs have stated a plausible claim against Schultz for supervisory liability under § 1983.

IT IS ORDERED that the

(1)  DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1012, Doc. No. 14) is denied.

(2)  DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV 1013, Doc. No. 14) is denied.

(3)  DEFENDANT RAYMOND D. SCHULTZ'S 12(B)(6) MOTION, AND MEMORANDUM IN SUPPORT, TO DISMISS PLAINTIFF'S COMPLAINT (Case No. 11 CV

1014, Doc. No. 15) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE